IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

STEPHANIE RENEE GARRETT                                                    PLAINTIFF

v.                                    Civil No. 09-2017

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                             DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Stephanie Garrett, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**Procedural Background**

The plaintiff filed her application for SSI on August 4, 2005, alleging an onset date of August 8, 1996, due to neck pain, muscle spasms in her legs, headaches, and psychological problems. (Tr. 78, 81). Her application was initially denied and that denial was upheld upon reconsideration. (Tr. 33, 34, 38). Plaintiff then made a request for a hearing by an Administrative Law Judge (ALJ). An administrative hearing was held on July 27, 2007. (Tr. 161-182). Plaintiff was present and represented by counsel.

At this time, plaintiff was 39 years of age and a possessed the equivalent of a high school education. (Tr. 167). She had no past relevant work. (Tr. 21).

On May 27, 2008, the ALJ found that plaintiff's post-traumatic stress disorder ("PTSD") and personality disorder were severe, but did not meet or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 16-20). After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity to perform a full range of work activity at all exertional levels with nonexertional mental limitations. (Tr. 20-21). Specifically, the ALJ found plaintiff experienced moderate limitations (more than slight but still able to perform in a satisfactory manner) in the following areas of mental functioning; 1) the ability to understand, remember, and carry out complex instructions, 2) make judgments on complex work-related decisions, 3) interact appropriately with the public, co-workers, and supervisors, and 4) respond appropriately to usual work situations and routine work changes. (Tr. 20). With the assistance of a vocational expert, the ALJ found plaintiff could perform work as an automotive detailer, hand packer, and kitchen helper. (Tr. 22).

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on January 30, 2009. (Tr. 2-5). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 8, 9).

**Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be

2

affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

**Discussion**

In the present case, the ALJ determined that plaintiff's PTSD and personality disorder were severe impairments. He did not, however, find her major depression and anxiety disorder to be severe. An impairment is not severe if it amounts only to a slight abnormality that would have no more than a minimal effect on the claimant's physical or mental ability to do basic work

3

activities. *See Bowen v. Yuckert,* 482 U.S. 137, 153, 158 (1987); 107 S.Ct. 2287 (O'Connor, J., concurring); *Page v. Astrue,* 484 F.3d 1040, 1043 (8th Cir. 2007); 20 C.F.R. § 404.1521(a). Basic work activities are defined as the abilities and aptitudes necessary to do most jobs ...." 20 C.F.R. § 404.1521(b).  These include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; use of judgment; understanding, carrying out, and remembering simple instructions; responding appropriately to supervision and co-workers; and dealing with changes in a routine work setting.  20 C.F.R. § 404.1521(b).  It is the claimant's burden to establish that his impairment or combination of impairments are severe. *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir. 2000).

Records indicate that plaintiff had a long standing history of major depression, anxiety disorder, PTSD, and drug abuse in remission.  She was molested at age twelve and was involved in various abusive relationships resulting in several miscarriages.  These experiences reportedly left her with vivid flashbacks and nightmares.  Plaintiff also had a history of severe depression that led to numerous suicide attempts and psychiatric hospitalizations as well as continued suicidal and homicidal ideations.  In addition, she reported suffering from panic attacks, bulimia, and anger management issues.  Plaintiff acknowledged problems with her temper causing her to black out, get angry, scream, and throw things.  She also relayed thoughts of hurting people when they made her angry.

Plaintiff had previously applied for disability due to these same impairments and had been awarded benefits in 1997.  Her benefits ceased when she was imprisoned in 2002 for possession of a controlled substance with intent and possession of a firearm.  Plaintiff indicated that she did not obtain any mental health treatment while in prison.  The records currently before

the court indicate that she failed to seek consistent treatment following her release. However, she underwent three consultative mental status exams and was assessed for outpatient treatment at Bill Willis Community Mental Health and Substance Abuse Center ("BWC") in 2006. Plaintiff stated that she was unable to follow through with treatment at BWC because she did not have a vehicle. Her license had also been suspended in 2006 for failure to pay traffic tickets, so she was unable to drive.

On November 1, 2005, plaintiff underwent a mental status examination with Dr. Patricia Walz. (Tr. 98-102). Dr. Walz noted that her thinking was logical and goal oriented. (Tr. 98-102). When asked about hallucinations, she reported hearing voices. She also stated that she sometimes felt like people were after her. Ms. Walz noted that plaintiff earned IQ scores in the extremely low range in all areas, but based on her evaluation of plaintiff, she did not believe her to be mentally retarded. She did, however, estimate her IQ to be in the low average range. Ms. Walz diagnosed plaintiff with PTSD; a history of methamphetamine abuse, reportedly in remission; bulemia; and, personality disorder with borderline and dependent traits. She opined that plaintiff's prognosis for significant improvement was guarded based on the chronic nature of her illness, her difficulty trusting others, and her history of drug abuse. (Tr. 98-102).

On November 9, 2005, Dr. Kay Gale completed a psychiatric review technique form ("PRTF") and a mental RFC assessment. (Tr. 108-126). After reviewing plaintiff's medical records, she diagnosed plaintiff with anxiety disorder and personality disorder not otherwise specified. Ms. Gale concluded that plaintiff would have mild restrictions of activities of daily living and moderate restrictions in social functioning and maintaining concentration, persistence, and pace. She also found plaintiff to have moderate limitations in the areas of understanding,

5

remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; working in coordination with or proximity to others without being distracted by them; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; maintaining socially appropriate behavior; and, adhering to basic standards of neatness and cleanliness. No episodes of decompensation were noted. (Tr. 108-126).

On June 13, 2006, plaintiff underwent a mental status exam with Dr. Robert Spray. (Tr. 103-107). Plaintiff was pleasant and cooperative with the interview. Her speech was spontaneous and her affect appropriate and variable. Dr. Spray noted that she seemed tense. She communicated adequately but her concentration was moderately impaired. Plaintiff appeared to have some problems with short-term immediate memory that Dr. Spray believed were related to her emotional state. Dr. Spray diagnosed plaintiff with PTSD, bipolar disorder not otherwise specified, methamphetamine abuse in remission, cannabis abuse in early remission, and personality disorder with dependent and borderline features. He stated that her condition was not likely to improve significantly within the next twelve months. Plaintiff appeared to be open and honest during the interview, raising no concerns regarding exaggeration or malingering. Dr. Spray indicated that her level of adaptive functioning was not consistent with a diagnosis of metal retardation, estimating her IQ to be between 80 and 84. However, due to her history of polysubstance abuse, he did not believe she would be able to manage funds without assistance. (Tr. 103-107).

On June 19, 2006, plaintiff was referred from GCBH to Bill Willis Community Mental Health and Substance Abuse Center ("BWC"). (Tr. 133-138). Records indicate that she had been clean from methamphetamine for three months after a long history of abuse, but was currently on probation. Plaintiff reported a history of chronic depression beginning at age fourteen with the loss of a child and three suicide attempts (ages 14, 21, and 22). She also described flashbacks and stated that she had "come to" in public in the fetal position after feeling threatened. Plaintiff was not completely aware of the triggers. She also reported auditory hallucinations. Bill Childs, a licensed counselor, noted that plaintiff's affect was primarily appropriate, her mood depressed (unmedicated) and congruent, her speech logical and coherent, her intelligence average, her appearance unkempt, her insight poor, and her behavior cooperative with good eye contact. He diagnosed plaintiff with moderate major depression, rule out PTSD, and rule out antisocial personality disorder. Mr. Childs assessed her with a GAF of 54 and admitted her to the outpatient treatment program. (Tr. 133-138).

On July 27, 2006, records from BWC indicate that plaintiff was taking Seroquel. (Tr. 141). Plaintiff was seen by Dr. Bryan Cates. (Tr. 143). She complained of severe anxiety attacks with shortness of breath, near syncope, a racing and pounding heart rate, pressure on her chest, nausea, and the inability to hold down food. Plaintiff also reported dreams of suicide and murder, but no homicidal ideation. Plaintiff stated that she had been very sad and depressed for the last couple of days. Her probation officer had reportedly stressed her out by threatening to send her back to prison. Plaintiff indicated that she had used Oxycontin in March 2006 and had a history of using anything she could get her hands on. She had reportedly not had any medication since June 26. Dr. Cates noted that plaintiff was coherent and very anxious. Her

affect was restricted and tearful with a depressed mood. She reported auditory hallucinations. Dr. Cates diagnosed her with a mood disorder not otherwise specified, a history of bipolar disorder with psychosis, and anxiety disorder. He prescribed a titrating dosage of Seroquel and authorized his staff to release samples of this medication to plaintiff. (Tr. 142).

On September 18, 2007, plaintiff was sent back to Dr. Walz for a second evaluation so that Dr. Walz could complete a mental RFC assessment. Dr. Walz indicated that plaintiff looked quite sedated. At one point her eyes actually rolled back in her head. Her speech was dysarthric,. Otherwise, plaintiff was cooperative, her mood was appropriate to the content of her speech, her affect was flat, her speech was monotone, her thought processes were logical and goal oriented, and her IQ was estimated to be in the low average range. Plaintiff reported a prior diagnosis of bipolar disorder and complained of extreme mood fluctuations. Appetite fluctuations and lack of energy were also reported. She also continued to experience intrusive memories of events, difficulty trusting others, and hypervigilance. Dr. Walz diagnosed her with dysthymia, PTSD, a history of polysubstance abuse in questionable remission, and personality disorder with borderline and dependent traits. She assessed plaintiff with a GAF of 50-55, which is indicative of moderate limitations. Dr. Walz stated that plaintiff's social skills were slightly impaired by her somnolence, her IQ was thought to be in the low average range evidenced by her ability to understand and carry out basic tasks, her concentration was impaired possibly due to intoxication, she experienced difficulty staying on task, and she worked quite slowly.

Dr. Walz also completed a mental RFC assessment. (T. 151-153). She concluded that plaintiff had moderate restrictions in the areas of making judgment on complex work-related decisions, interacting appropriately with the public, interacting appropriately with supervisors,

8

interacting appropriately with co-workers, and responding appropriately to usual work situations and changes in a routine work setting. Otherwise plaintiff's limitations were only mild. Dr. Walz indicated that substance abuse affected plaintiff's concentration and attentiveness and likely contributed to her depressed mood. However, the questionnaire she completed did not include questions concerning plaintiff's concentration, persistence, and pace or her ability to maintain socially appropriate behavior in the workplace. (Tr. 151-153).

It seems clear to the undersigned that plaintiff's depression and anxiety are also severe impairments that would have an impact on plaintiff's ability to function in the workplace and perform work-related activities. The Defendant contends that the ALJ's failure to list depression and anxiety in his finding concerning plaintiff's severe impairments was a mere typographical oversight. He asserts that the ALJ did consider plaintiff's anxiety and depression when assessing her RFC. However, we do not agree. There are several areas of functioning that we find to be impacted by plaintiff's depression and anxiety. These were not included in the ALJ's RFC assessment. Therefore, we believe remand is necessary to allow the ALJ to reconsider these impairments.

After reviewing the medical evidence of record, the undersigned finds also that the ALJ's RFC is not supported by substantial evidence. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams*

9

*v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  *Lauer v. Apfel,*  245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

We note that both Drs. Spray and Gale  found plaintiff to have moderate limitations in the area of concentration. However, the RFC questionnaire submitted to Dr. Walz did not ask questions concerning plaintiff's ability to concentrate.  There is also a question concerning plaintiff's ability to maintain socially appropriate behavior.  As previously noted, plaintiff had reported homicidal ideations, anger management issues, and experiencing extremely vivid flashbacks causing her to black out.  Plaintiff also has a history of drawing disability for these same impairments.  In spite of this, the ALJ concluded that plaintiff only experienced moderate limitations (more than slight but still able to perform in a satisfactory manner) in the areas of understanding, remembering, and carrying out complex instructions; making judgments on complex work-related decisions, interacting appropriately with the public, co-workers, and supervisors; and, responding appropriately to usual work situations and routine work changes. He made no finding regarding her ability to maintain attention for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, complete a normal workday and

10

workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length or rest periods, accept instructions, respond appropriately to criticism, or maintain socially appropriate behavior. As the evidence suggests more limitations than assessed by the ALJ, we do not find the ALJ's RFC to be supported by substantial evidence. On remand, the ALJ will revisit plaintiff's RFC and will request a more complete RFC assessment from Dr. Walz. It is also strongly suggested that the ALJ obtain an RFC assessment from Dr. Spray.

We note that the evaluation of a mental impairment is often more complicated than the evaluation of a claimed physical impairment. *Andler v. Chater,* 100 F.3d 1389, 1393 (8th Cir. 1996). Evidence of symptom-free periods, which may negate the finding of a physical disability, do not compel a finding that disability based on a mental disorder has ceased. *Id.* Mental illness can be extremely difficult to predict, and remissions are often of "uncertain duration and marked by the impending possibility of relapse." *Id.* Individuals suffering from mental disorders often have their lives structured to minimize stress and help control their symptoms, indicating that they may actually be more impaired than their symptoms indicate. *Hutsell v. Massanari,* 259 F.3d 707, 711 (8th Cir.2001); 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(E) (1999). This limited tolerance for stress is particularly relevant because a claimant's residual functional capacity is based on their ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir. 1982) (abrogated on other grounds).

AO72A
(Rev. 8/82)

**Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 23rd day of February 2010.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)